Good afternoon, your honors, and may it please the court. My name is Elizabeth Khrushchev and I represent Louie Josytewa. I will watch the clock and try to reserve about three minutes for rebuttal. There were multiple trial errors here that both individually and combined require that Mr. Josytewa's convictions be vacated and there be a remand for a new trial. I will start with the 414 evidence and to be clear my argument here is a 403 argument based on on the factors of LeMay. Here the jury was presented with evidence of Mr. Josytewa's 1992 prior conviction for aggravated sexual abuse of a minor. And I want to be clear that the jury was not simply presented with the fact of that conviction. They did not simply see the judgment, although they did get that. What they got was a detailed description of the acts to which Mr. Josytewa confessed and that information was delivered through a former FBI agent who interrogated him. What the jury heard was that Mr. Josytewa was home alone with a young girl, that he took her aside, he removed her lower clothing, he attempted to rape her but her body was too small for him, and then prior to that he penetrated her digitally for a while. He wiggled his finger in there for a while and then there was discussion about how far he inserted his finger up to which knuckle. He said maybe the second, then he thought about it and he said maybe the first. Those graphic details were the first thing that the jury heard about Mr. Josytewa. Mr. McIlwain, the former FBI agent, was the first witness to testify or excuse me he was actually the second witness to testify. The first was Wendy Dutton. Here the LeMay Factors Council in favor of excluding this level of graphic detail under Rule 403. First of all, this is not a similar act. This is not a case where similarity is in the details as some of the case law says. The details of the prior offense are much more graphic and much more serious than what was at issue in this case because what was at issue in this case was simply a very brief, over-the-clothes touching of a young child between her legs at a well-populated family birthday party. What was at issue in the prior was something completely different and much more graphic. Moreover, the prior... So wouldn't the intent be the same in both of those incidences? In terms of the intent to arouse oneself sexually, that's what you mean? Correct, yes. Yes, the intent would be the same. But my issue, and that maybe goes to necessity perhaps and possibly similarity, but here's where my problem is. The level of detail that was provided by the FBI agent. So the way that this particular 414 evidence came in is the problem. And so I pointed the court to cases in my briefs where this court has approved 414 evidence but because it was sanitized. And here there was no sanitization. All the details came in. The government could have presented this information differently. And wasn't that object on that ground, Ms. Boucher? Well, so when it was litigated, the motion limiting papers, the Defense Counsel specifically said this is far more serious and graphic than what the charged conduct is. So yes. Did they make a proffer as to what evidence would be admissible in a more sanitized fashion? No, I don't believe that that did come up. I believe they challenged just the entire admission based on, and I would say this is important, Your Honor, based on what the government's proffer of what they planned to present was. And so the government said we're going to present this in this particular fashion with this FBI agent testifying to this particular evidence. And then the response was no, that evidence should not come in. So is it plain error review? No, it's not, Your Honor. Our position is that it's preserved and the government didn't argue otherwise. In fact, the government didn't argue one way or the other. They didn't even argue harmlessness. They've sanitizing of the description, correct? Well, not exactly, Your Honor. No, I think that is a massive defect because evidence, what I'm pointing to is that this particular court has upheld evidence of 414 other acts evidence in the past because it was sanitized. And what I'm saying here is there was no sanitization, and that increases the prejudicial value so that when you're doing the analysis of here's how the government's going to prove its case, then you have to look at how the evidence actually came in and how the evidence actually came in was in this fashion. If the FBI agent had taken the stand, this is hypothetical by definition, had taken the stand and simply described that Mr. Joy Estivall had had a prior inappropriate sexual contact with an underage young girl, would you have the same argument? I probably would make the same argument, Your Honor, but I think I would have a harder argument under the abuse of discretion standard, if that answers your question. Yes, it does. Thank you. My position is that this shouldn't have come in, and you have to look at the way that it came in to make that decision. Okay. If there isn't a point... But isn't it a plain error of you? Is it not... Doesn't the defendant have to make a proffer of what a sanitized presentation would be in order for us to review the note? I don't believe so, Your Honor. I don't think that that is the issue because the claim that I have raised and that was preserved in lower court and that the government has conceded by not addressing it at all, I would point out, is that this evidence should not have come in. How it came in was the government's choice. This was what the government presented, and we objected to that. And I'm continuing to object to that, and I'm saying this shouldn't have come in at all. What I am acknowledging is that what really makes it prejudicial is the graphic nature of it, if that makes sense. It would be a harder case for you to argue error at this level if trial defense counsel had convinced the court to put in a sanitized version. That is what I'm saying, Your Honor. I acknowledge that that would be more difficult for me, but that is not the case here. Thank you. Thank you. What kind of rule are you advocating for? What's the dividing line when sanitization has to occur or if you need to do some discretion and when it's not? Well, Your Honor, I think in this, I don't know that I can articulate here's exactly where the line is, but what I'm saying is, in this case, it went too far. And it went too far because of the disparate nature of the prior and the charge conduct. When you have something that's so different in nature between the brief over the close touching and the prior is very graphic, the details of the prior are very graphic. And the other thing I would point out as I did in the beginning, this was the second witness, this was the first thing the jury heard out of the And the government used it in their closing. They said, this guy is a child molester. You heard what he did to that nine year old girl. You can use those details. So what I'm saying is, I'm asking for some mindfulness about accommodating what 414 allows versus allowing it to go too far. Did I answer your question? Yes, you did. Can you give me some argument on the closeness and time factor? Because to me, 25 years does seem quite a long time. Yes. Yes, 25 years is a long time. So that's 25 years from the date of the conviction to the date of the offense. The government seems to argue that maybe you should consider the prison term as well in the closest of time. Even if you consider he was in prison for about seven years, so you're left with an 18 year gap when there was no intervening misconduct on behalf of Mr. Josue Tewa. Now, I acknowledge in my briefs that this court does not have a bright line rule for how we judge that, but I would submit to you that that 25 year period when you're looking at no intervening misconduct is significant. Now, I know that the government has argued that Mr. Tewa should be charged with avoiding children's birthday parties and avoiding drinking. I did address that in my reply brief, and what I would say is, first of all, those are not... There's no misconduct there. It just shows, at most, it shows that he's being mindful. It actually might even show that he had an opportunity to reoffend and did not, but in any event, the fact is there is no misconduct between the date of the conviction and the day of the charge conduct. But you... Do you wanna address the Alvin Charge issue before you move on? If you would like me to, Your Honor, sure. So, my position on the Alvin Charge is that the judge initially... What the judge initially said was inappropriate, and the judge recognized that. He did... I acknowledge that he tried to fix it. My position is that he did not sufficiently fix the problem. I think his initial error is very clear. He even acknowledged it himself. He basically told the jury, you need to come back and you're gonna stay here until you reach your verdict. He tried to undo that, but the problem, Your Honor, in the error, it doesn't get fixed, is that he's essentially saying, don't think about the elephant in the room. It's like, it's okay if you don't reach a verdict, but actually, I'd really like you to reach a verdict. And so it puts those issues back in front of the jury. In a very quick turnaround, within five minutes, he called the jury back in. And so it puts those issues right in front of the jury. Juries look at judges for guidance. They want to please judges. They listen very carefully to judges. And this judge made a very clear statement to the jury that they needed to focus on reaching a verdict. Am I reading the transcript? Go ahead, Judge Baird. Did you put any affidavits or declarations from jurors in to say that they were affected by this charge? No, I didn't. My reading of the transcript is that Judge Reyes sent the jury off and then realized that by saying what he did when they first went out, he may have led them to believe that they were gonna have to work over the weekend or something like that. And he immediately called them back in and made clear that if they didn't reach a verdict within normal time constraints, they would come back a day or another time and continue their deliberations. What's wrong with that? What's wrong with that is he made an error initially, and I agree that he tried to fix it. But the problem is that he didn't fix it. What he actually did was refocus the jury on the importance of reaching the verdict. And so by reemphasizing that, he puts that more in the jury's mind, and ultimately that becomes coercive because the fact was they did relatively quickly and over the lunch hour was what they had. There was about an hour and a half after that that they came back with a verdict. That was over the lunch hour, so we don't know. I don't have anything in the record that shows that they took lunch or not, but they came back relatively quickly. And so my position is he did not fix that error. He actually compounded the error by trying to. I see that I'm running low on time, so I will reserve the remainder unless you have any further questions. Thank you. Mr. Powell? Good afternoon, your honors. May it please the court, my name is Ryan Powell, and I represent the United States. I'll start with the discussion of the 414 evidence. It seems like the defendant's primary argument now is that this evidence should have been sanitized at trial, but that argument fails for a number of reasons. First, the defendant did not make this argument at the district court. He did not ask for this evidence to be sanitized below. The defendant did ask for the evidence to be excluded, but once the district court ruled that the evidence would be admissible, the defendant did not ask for this evidence to be sanitized. Second, your honors, this court has rejected the idea that this type of evidence should be sanitized. In Lemay, the court addressed this exact argument the defendant makes here and rejected the idea that the government should be limited only to proving the fact of conviction. And as the Lemay court recognized, it's the facts of the prior crime that make it relevant, and that's certainly true in this case. The third reason the defendant's argument fails is that this court regularly affirms this type of evidence. In the vast majority of cases where this court has considered Rule 413 or 414 evidence, where there's a contact offense like there was in this case, in the vast majority of those cases, the details of the prior crimes were admitted at trial, and very often through the testimony of the victims themselves. And in every instance, this court has affirmed the introduction of that testimony, the introduction of that evidence. So there's no limitation whatsoever? There is a limitation, your honor. The government can put in whatever they want? Not at all, your honor. The limitation here is Rule 403. The court has outlined in Lemay different factors that the district court should consider when making the 403 analysis. But in this case, the evidence was properly admissible under Rule 403. It was relevant and therefore probative on a number of different issues. First, it established the defendant's propensity to commit this type of crime. It showed his unusual sexual interest in children that is not present in ordinary people. And not only did it generally show that, but it showed his specific propensity to commit this type of crime, to touch a very young girl's reproductive with respect to... But you would have had that if you had simply ratcheted down and sanitized, if you will, the agent's testimony to say that 25 years ago, that he had a very similar offense involving a young girl and was convicted, and it involved touching of private areas. Why do you need to go into how many knuckles went into the vagina? Why is that necessary? Well, your honor, again, I think that it goes both to his propensity and to his intent. And the way that the court, the hypothetical that the court just posed, essentially would cover most of the ground that the defense objects to. As this court recognized, these are very similar offenses. The fact that in 1991, he touched a nine year old girl's genitals with his hand, and in this case, he touched a seven year old's genitals with his hand. Moreover, as Judge Gumate asked about, this goes directly to his intent. The type of crime that was charged in this case, where the defendant reached out and briefly touched this little girl's genitals over her clothes at a family birthday party, that is the type of act where the defendant's intent is less clear, is less obvious than it might be. I give you all of that. Why was it necessary to have the FBI agent describe how deeply the defendant penetrated the nine year old's vagina in the prior case? Why was that necessary? Again, your honor, the government's position is that that was necessary. I know what your position is, but one of the duties that an assistant United States attorney has is to preserve the record so you don't lose on appeal. You didn't have to put... Did you try the case? Yes, I did, your honor. You didn't have to put that graphic evidence of how far the finger went in to achieve the stuff that you've described. All you had to do was have the agent say, prior offense, unwanted touching of vagina, that's exactly what's involved in this case, and be done with it. Then you don't have judges like me asking you these questions. Why did you have to gild the lily? Your honor, the government's position is that it did not gild the lily. The government presented this evidence through the testimony of the FBI agent, rather than through the testimony of the victim. The government asked the district court to give a limiting instruction at the time of this testimony, which this court has recognized in Thornhill, prevents the risk of unfair prejudice. And the government reiterated to the jury, both in opening and closing, that the jury could not convict the defendant, simply because of what he did in 1991. And so the government did take efforts, your honor, to present this in a fair way, to present this in a way that was admissible under Rule 403, and to present this in a way that minimized the risk of unfair prejudice to the defendant. And again, this is not relief that the defendant sought below. The defendant never asked to have this sanitized, and the government believes that it presented this evidence in a way that minimized the risk of unfair prejudice to the defendant. The only two cases the defendant cites to support this argument, that this should have been sanitized, are fundamentally different, because those are child pornography cases. This is not a child pornography case. This is a contact offense. Moreover, in one of those cases cited by the defendant, the Thornhill case, the jury learned not only the fact of the defendant's prior conviction, but also the fact that the victim in that case was the defendant's 11 year old daughter. And this court affirmed the introduction of that testimony, even though the court, in its own words, found that incest can have a rare power to disgust. And in the other case cited by the defendant to support this argument, the Sheldon case, again, that was also a child pornography case, and the defendant's prior conviction was also for child pornography. And so the details that would make that prior conviction relevant... Counselor, can I ask you about the LeMay factors? By my count, it looks like at least three of them would counsel against admission of this evidence. It wasn't close in time, it was not frequent, and there's no interviewing events, and it was not necessity, at least the details that were actually admitted. So how wonderful were three that was admissible? Your Honor, the government's position is that each of those factors weigh in favor of admissibility, and I'll address each of them in turn. With respect to... Admissibility, it argues in favor of the admissibility of the fact of the prior offense, without all the gory details. I understand your position, Your Honor. I will start with the necessity of the evidence, because again, I think that's where the details are most relevant in this analysis. Judge Bumate asked about proving the defendant's intent. As I was saying earlier, this is a case where his intent is less clear, is less clear than it might be in other types of child sex abuse cases. Moreover, when the defendant was asked, when he touched the victim in this case, whether he had an erection or felt one coming on, he said no. And so that further put his intent into question. And sure enough, when the jury was deliberating, it asked the court a question of whether the United States was required to prove the defendant's sexual intent when he touched the victim, and the answer was yes. The details of his prior offense, in the government's view, are exceptionally probative with respect to what his intent was. And as this court recently noted in the Hansen decision, where evidence supports the defendant's mens rea, that is sufficient for admissibility under LeMay. With respect to closeness in time, Judge Bumate, as defense counsel noted, there is no bright line rule. This court previously has affirmed the introduction of testimony that was 45 to 50 years prior. That was in the Medicine Horse decision. The legislative discussion around these rules shows that Congress anticipated that this type of evidence would often involve very substantial lapses in time. And finally, the court considers the totality... So the question of remoteness, that's distinct from the remoteness of 404B. Is that the government's position? Because in 404B, it needs to be a little closer, I think. And so your argument is, under 414, that remoteness inquiry is very lax. Well, I think that this court's precedents show that under Rule 414, that this court has affirmed the admissibility of evidence that is a far greater time gap than in this case. So I do think that it's different in this context of Rule 414. I think Congress anticipated that, and I also think that the court looks at the totality of the circumstances, and that these factors do intersect with each other. And so one of the other factors is intervening circumstances. And the defendant, when he was interviewed in this case, did talk about the fact that he doesn't go to children's birthday parties to avoid trouble, and also that he doesn't drink alcohol because he doesn't wanna lose control of himself and end up back in jail. And I understand the defense position that these were somehow innocent comments, but the defendant did not say that he doesn't drink because he doesn't wanna get in trouble. He said he doesn't drink because he doesn't wanna lose control of himself and end up back in jail. And when he was asked about touching the little girl in this case, he admitted that it was something that he could not control. And so what those statements illustrate is that his propensity to do this was ongoing during these intervening years, and propensity is one of the reasons that this evidence is admissible. And so that plays into the length and time between these two facts. Additionally, with respect to the frequency of events, the record illustrates that the defendant not only committed the crime against the girl in 1991 and the victim in this case, but there was also a third incident that involved three children. Now, that third incident was excluded from trial, but that third incident, based on the defendant's own admissions, did happen. In LeMay... Can we take that third incident into account in the frequency analysis? Yes, you can, Your Honor. And in fact, in LeMay, the court did just that. In LeMay, there was the prior incident, there was the incident at trial, and then there was also evidence of a third incident that was excluded from trial. But the LeMay court considered that third incident, even though it was excluded at trial, and said that the presence of that third incident suggests that this was not an isolated incident, and therefore, with respect to the frequency of events factor, cuts in favor of the government. And that's the same situation here, that even though this third incident was excluded from evidence at trial, the record establishes that it happened, and that it was not an isolated event. One year was the third incident, was, in respect... Or how close it was? Was it closer than the 25 year event? It is unclear, Your Honor, but that third incident, the defendant did discuss that third incident when he was being questioned about the 1991 incident. So it happened at least... It happened at least before he was interviewed, and there is nothing in the record to suggest that it was closer in time than the incident for which he was questioned. I'd like to turn briefly to the Allen instruction that the court asked Ms. Krusek about. Two points I'd like to make. One is with respect to the form of the instruction. The record is clear that the form of the instruction in this case was the model instruction approved by this court. As soon as the court finished reading the model instruction, it asked the jury, does anyone want a copy of the instruction I've just read? That is at ER 366. That certainly conveyed to the jury that the instruction was over. The court also told the jury that it would provide a copy of the instruction, that it was to continue its deliberations and would have a copy of the instruction. That also indicated to the jury that the instruction was finished at that point. The court then completely shifted gears and told the jury, you guys, you're on your own schedule, and started talking about when the jury would take lunch. I don't think anyone would argue that those comments, the discussion about lunch was part of the Allen instruction, and it was only after that that the court told the jury, if you don't have a verdict by 430, come back and continue tomorrow. Finally, with respect to the actions that the district court took to correct any error that might have occurred based on his scheduling comments, the court did call the jury back almost immediately and reiterated to them that they did not need to reach a verdict. In fact, almost the first words out of the district court's mouth were, I didn't wanna leave you the wrong impression. I didn't mean to leave the impression you have to reach a verdict. That's at ER 367. The district court then told the jury, if you don't reach a verdict, let us know like you did before. And as this court held in Berger, when the court makes a corrective instruction, the court neutralized the coercive effects of its earlier informal comments, and that's exactly what the court did here. And there is no plain error with respect to the Allen instruction. Thank you. Right on time. Thank you, counsel. Ms. Kushta. Thank you, your honor. I wanna go back to the 414 evidence for just a moment and address the frequency issue because Mr. Powell raised a prior incident that was excluded from trial. He correctly stated that. And I just wanna make the point that nobody knows as far as what's in the record when that incident occurred, except that we do know that it occurred before the 1991 conviction. So we are still left with a 25 year period of no misconduct whatsoever. And so the idea that something happened pre 1991 does not make any misconduct frequent. I wanna talk also, the government made a couple of statements about the importance of the 414 evidence is in the details. That may be the case in some cases. It's not the case here. The details here are nothing but prejudicial. And that is the analysis. That is my argument, that the evidence that was presented is unduly prejudicial. And I wanna make that clear. This is not a case where the details flush things out. This is a case where the details do nothing but prejudice my client. Did the trial defense counsel offer to stipulate to the mere facts of the 25 year old event? There's nothing in the record about that, your honor. There's simply the notice and then the motion in limine to exclude. Okay. Thank you. And I think because this evidence is so different from the charged conduct, you have the lack of similarity, you have the lack of intervening circumstances, the remoteness in time, the lack of necessity, all of those factors weigh in favor of exclusion. It's simply we've been focusing here because it's so shocking the prejudicial nature of the graphic details. But overall, the evidence should have been excluded. The other thing I wanna... Counselor, can I ask, can we use the Lemay factors to say that it should have been sanitized versus excluded? And has any court done that? Well, here's... So here's how I was trying to argue it. Maybe I haven't been clear. In looking at the prejudice, which is what Lemay is set out to address, you have to look at the evidence that was presented. I mean, you have to look at how it came in at trial. And the fact here is that the way it came in causes those exclusion in a way that maybe is more powerful than it would be if less had come in. Does that make sense? So yes, you can use them because what you're looking at is, what were the details that came in? How similar was that? How necessary was that particular evidence? Because you have to deal with what you have, how the government presented it. So those factors could allow. And I would point out that within the analysis of the Lemay factors, one of the main reports look at, like Thornhill, like Sheldon, like Hanson, talk about the fact that the conviction wasn't prejudicial because it was sanitized. That's how that when they're going through their analysis, they're saying, well, the prejudice wasn't so bad because this was sanitized, because the jury didn't get the gory details. The reason in Thornhill that they talked about incest was because the hands on offense had been incestuous in nature, and the porn that was being looked at was also incestuous in nature. And so there was a similarity there that this court found made sense to allow the jury to hear. That is simply not the case here. The jury did not need to hear the details of the knuckles and the wiggling and the attempted rape, and her body is too small in order to make its decision. Were those details made known to the court and to defense counsel in the motion of the Lemay proceeding? The notice of 414 did state how the government was going to provide that evidence, yes. I see I've gone over my time. I'm sorry, Judge Bumate, did you have a question? No, that's it. Unless my colleagues have any other questions, you are out of time. Okay, thank you very much, counsel. This case will be submitted, and we will turn to Yasmus Juarez Coyo versus the city of Eloy.
judges: Hawkins, Bea, Bumatay